IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **VICTORIA DAWN ROBINSON,** | : | |
| **Plaintiff,** | : | |
| v. | : | 5:09-CV-156 (CAR) |
| **HOUSTON COUNTY, and SHERIFF CULLEN TALTON, in his Official Capacity as Sheriff of Houston County,** | : | |
| **Defendants.** | : | |

*ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

Currently before the Court is Defendants Houston County and Sheriff Cullen Talton's, in his official capacity only, Motion for Summary Judgment [Doc. 9]. Plaintiff, Victoria Dawn Robinson, as Next Friend and Guardian of the decedent's daughter, has responded to the Motion [Doc. 17], and Defendants filed a Reply [Doc. 18]. Having read and considered the Motion, the record in this case, the applicable law, and the arguments of the parties, the Court finds that Plaintiff fails to raise genuine issues of material fact on any of her claims and therefore **GRANTS** Defendants' Motion for Summary Judgment [Doc. 9].

## BACKGROUND

This case arises from the suicide of Ralph Greg Pinegar ("decedent"), who hanged himself with a shoelace in the Houston County Jail. Plaintiff brings this suit under 42 U.S.C. § 1983 contending Defendants used inadequate policies to screen, monitor, and protect suicidal detainees. On April 29, 2007, decedent was arrested for driving under the influence of alcohol. The arresting

1

officer transported decedent to Houston County Jail, which is operated by the Houston County Sheriff's Office.

The Sheriff's Policies on Screening, Monitoring, and Protecting Suicidal Detainees

The Sheriff's written manual outlines screening procedures to be followed when a detainee does not bond out of jail. Based on the screening process, the booking officer determines where to house the detainee in order to "maintain facility safety, security, and order." (Talton Decl. Ex. A). The manual specifically addresses suicide prevention: "It is the policy of the Houston County Detention facility to keep all inmates in a safe and secure environment. It is the facility policy to prevent inmates from harming themselves as well as others." Id. Therefore, as part of the screening process and in order to classify and protect the detainee, the booking officer is to ask the detainee a series of standard questions, some of which are designed to alert the jail staff of a potential suicide risk.

Moreover, the booking officer is to observe "the inmate during booking to seek any indications of suicidal potential. These [indications] include the inmate being extremely nervous, hyper, and confused. The inmate may be embarrassed and/or expressing guilt. The inmate may be displaying scars on wrists." Id. Additionally, a Suicide Classification Awareness Form may be completed if any doubt exists that a detainee is a suicide risk. Not only is the booking officer to ask the detainee questions relating to suicidal thoughts and past attempts, but also the booking officer is to make an independent evaluation of the detainee's suicide risk. Specifically, the booking officer is to fill in "yes" or "no" based on the detainee's answers and demeanor to the following questions:

1. Have you ever attempted suicide?
. . .
5. Do you have any scars on your wrist?

> 6. Have you had any recent suicide thoughts?
> 7. Since incarceration do you have suicide thoughts?
> 8. Are you taking any medication for depression?
> 9. Do you have a mental health doctor?
> 10. Have you ever been in a mental hospital?
> . . .
> 12. Is inmate extremely embarrassed, nervous, hyper, confused?
> 13. Self evaluation of suicidal potential?

(Talton Decl. Ex. B).

Based on the detainee's responses and the booking officer's observations, the booking officer is to decide whether the detainee is a suicide risk. If the detainee is a suicide risk, special procedures are followed, such as requiring the detainee to wear a suicide suit, be segregated from the general population, and be monitored more closely. However, if the booking officer determines a detainee not to be suicidal, the detainee is placed in general population, and the booking officer is to check on detainees every 30 minutes. (Pilarsky Dep. p. 33). If a staff member discovers an inmate in need of emergency medical attention, that staff member "is to immediately notify the medical staff, and supervisor of the situation and his location." (Talton Dec. Ex. A).

Decedent's Booking Process and Suicide

When decedent arrived at Houston County Jail on April 29, 2007, he informed the booking officer he would not be bonding out of jail. Therefore, the booking officer followed the Sheriff's screening policy. He asked decedent the standard screening questions and observed him for signs of suicide. Based on decedent's answers and the booking officer's observations, the booking officer determined decedent not to be suicidal. (Doc. 9 Ex. B; Pilarsky Dep. pp. 24-25).

Nevertheless, the booking officer took extra precaution and completed the Suicide Classification Awareness Form. Decedent's answers to each question and the booking officer's

independent evaluation suggested decedent was not suicidal. (Id.). Therefore, based on the screening process, the booking officer housed decedent in the general population.

In accordance with jail procedure, the booking officer checked on detainees in the general population every 30 minutes. (Pilarsky Dep. pp. 33, 57). When the booking officer checked on decedent at 3:30 a.m., decedent appeared to be sleeping on the bottom bunk in the holding cell. (Id. p. 59). However, when the booking officer returned at 4:00 a.m., he found decedent hanging from a shoelace around his neck. (Id. p. 52). The booking officer immediately yelled for help and ran to get scissors to cut the shoelace. Decedent was still breathing when the other officers responded. After the booking officer cut the shoestring, two of the officers performed CPR. The ambulance arrived at approximately 4:15 a.m. and transported decedent to a nearby hospital around 4:20 a.m.. Thereafter, decedent died.

<u>The Present Lawsuit</u>

On April 18, 2008, as required by O.C.G.A. § 36-11-1, Plaintiff notified Defendants and the Houston County Board of Commissioners of her intent to sue Houston County for decedent's wrongful death. Approximately a year later, Plaintiff filed suit against Houston County and the Sheriff alleging violations of decedent's constitutional rights under § 1983, as well as other state law claims. Plaintiff contends Defendants used inadequate policies and improperly trained jail personnel on screening, monitoring, and protecting suicidal detainees.

Specifically, Plaintiff alleges Defendants (1) failed to take the required precautions to protect decedent, (2) failed to adequately monitor decedent, (3) failed to remove suicide items from decedent, such as his shoestrings, (4) failed to place decedent on suicide watch, (5) failed to adequately train, supervise, or intervene jail personnel regarding detainee safety, and (6) used

4

inadequate policies and practices of screening, monitoring, and protecting suicidal detainees. (Compl. ¶¶ 24, 26-29). Plaintiff also alleges Houston County negligently supervised and retained the Sheriff after having knowledge of the inadequate polices in place. (Compl. ¶ 28). In addition, Plaintiff asserts state law claims of wrongful death and negligence against Defendants.

Plaintiff also attempts to add two new claims through her Response to Defendants' Motion for Summary Judgment. First, Plaintiff attempts to allege a claim under § 1983 that Defendants' failure to maintain a first aid kit, medical personnel, and/or a medical facility at the jail resulted in deliberate indifference to decedent's constitutional right to health and safety. Second, Plaintiff attempts to assert a claim that Defendants violated decedent's Fourth Amendment right against excessive force. (Pl. Resp. pp. 10-12). Although Plaintiff made a passing reference to the Fourth Amendment in the Complaint, Plaintiff's specific allegation of excessive force was not raised. In fact, the only mention of this claim in the Complaint states "Defendants' conduct towards Plaintiff caused his [sic] to be subjected to a deprivation of his rights under the Fourth and Fourteenth Amendment." (Compl. ¶ 26).

Plaintiff will not be permitted to raise additional claims for the first time in a response brief as this deprives the opposing party of the proper notice of the claim as well as the opportunity to develop a defense. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[P]laintiff may not amend her complaint through argument in a brief opposing summary judgment."); Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1286 (11th Cir. 2003) (stating that claims not raised in a complaint cannot be raised for the first time in plaintiff's response to defendant's motion for summary judgment). The Court now turns to address the merits of Plaintiff's claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26.

This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## DISCUSSION

Plaintiff asserts claims against the Sheriff in his official capacity for using inadequate policies to screen, monitor, and protect suicidal detainees. Plaintiff also attempts to assert the same claims, as well as a failure to train claim, against the Sheriff in his individual capacity. Finally, Plaintiff alleges Houston County is liable for allowing inadequate policies on screening, monitoring, and protecting suicidal detainees and retaining and supervising the Sheriff after having knowledge of these improper policies.

Plaintiff, however, fails to create any genuine issue of material fact on her claims against Defendants. First, Plaintiff's claims against the Sheriff in his official capacity fail because a sheriff acts as an arm of the State and is thus entitled to Eleventh Amendment immunity when administering and operating a county jail. Second, Plaintiff's claims against the Sheriff in his individual capacity fail because Plaintiff cannot establish a causal connection between the Sheriff's actions and the alleged constitutional violation. Third, Plaintiff's claims against Houston County fail because a county is not liable for the acts of its sheriff when the county has no actual authority over the sheriff's actions.

Finally, because all of Plaintiff's claims over which the Court has original jurisdiction fail, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore,

the Court grants Defendants' Motion for Summary Judgment for all of Plaintiff's federal law claims, and dismisses without prejudice Plaintiff's state law claims.

**I.      Section 1983 Claims**

*A.      Claims Against the Sheriff in his Official Capacity*

Although Plaintiff contends the Sheriff used inadequate policies to screen, monitor, and protect suicidal detainees, the Court finds the Sheriff, in his official capacity, acted as an arm of the State when promulgating these policies and is therefore entitled to Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution "bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 1107 (2004). "To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State." Id. "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. The particular functions at issue in this case are the Sheriff's policies on screening, monitoring, and protecting suicidal detainees and training the jail staff on those policies.

The Eleventh Circuit has consistently held that a sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County." Manders, 338 F.3d at 1315 (holding that sheriff acted as arm of state when he established and executed a use-of-force policy at county jail); see also Scruggs v. Lee, 256 F. App'x 229, 232 (11th Cir. 2007) (holding that sheriff was entitled to immunity when establishing policies at the jail for processing arrestees); Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1324-25 (11th Cir. 2005) (holding that

county sheriff acted as arm of state, rather than county, when promulgating policies and procedures governing conditions of confinement at county jail).

In Turquitt v. Jefferson County, the Eleventh Circuit held that sheriffs act "exclusively for the state rather than for the county in operating a county jail." 137 F.3d 1285 (11th Cir. 1998). In that case, a pretrial detainee's estate sued the county and the sheriff, in his official capacity, under § 1983 because the decedent was killed during an altercation with another county jail inmate. Id. at 1286-87. The plaintiff alleged the defendants were deliberately indifferent to the decedent's constitutional right to safety because the sheriff's policy of supervising inmates and the staff training in that regard were inadequate. Id. at 1288. After a thorough analysis, the Eleventh Circuit concluded that "the sheriff has control over inmates of the jail, the employees of the jail, and the jail itself," and therefore, the sheriff acts as an arm of the state, not the county, regarding "the daily operation of the jails" and the "supervision of inmates." Id. at 1289.

Here, Plaintiff's claims are similar to those in Turquitt and other cases from this circuit. Plaintiff alleges the Sheriff's policies on screening detainees for suicide risk, monitoring detainees while in jail, and protecting detainees from harm to themselves are inadequate. Additionally, Plaintiff contends the Sheriff failed to properly train the staff in this regard. These functions concern the daily operation of Houston County Jail, and the Eleventh Circuit has already determined that a sheriff acts as an arm of the State when executing such functions. Therefore, the Sheriff is entitled to Eleventh Amendment immunity from suit in his official capacity.

Even if the Court were bound to consider the additional § 1983 claims raised in Plaintiff's Response, these claims would still fail because the Sheriff is entitled to Eleventh Amendment immunity. Plaintiff contends the Sheriff's policies are inadequate for three additional reasons: first,

no medical personnel were at the jail; second, no first aid kit existed; and third, only one jailer was on duty at the time of the incident. However, because these policies relate to the administration and operation of Houston County Jail, the Sheriff acted as an arm of the State with respect to such decisions. See Boyd v. Nichols, 616 F. Supp. 2d 1331, 1343-44 (M.D. Ga. 2009) (holding that sheriff acted as arm of state when establishing policies relating to detainee protection and county jail staffing). Therefore, the Sheriff is entitled to Eleventh Amendment immunity from suit.

    *B. Claims Against the Sheriff in his Individual Capacity*

The Court is unclear whether Plaintiff also intended to sue the Sheriff in his individual capacity. Although evidence suggests the Sheriff was sued only in his official capacity, Plaintiff's Complaint and Response to Defendants' Motion for Summary Judgment somewhat allude to the Sheriff's individual liability. "[I]n general, plaintiffs have a duty to make plain who they are suing." Colvin v. McDougall, 62 F.3d 1316, 1318 (11th Cir. 1995). However, even if the Court construes Plaintiff's § 1983 claims against the Sheriff in his individual capacity, the claims still fail because they are based solely upon the Sheriff's supervisory role as sheriff of Houston County.

    1. The Sheriff's Policies on Screening, Monitoring, and Protecting Suicidal Detainees

Although Plaintiff contends the Sheriff's policies and training of jail personnel were improper and resulted in deliberate indifference to Plaintiff's constitutional rights, Plaintiff presents no evidence to support these allegations. It is well established in this circuit that "[s]upervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the

10

actions of a subordinate is extremely rigorous." Id. (internal quotation marks and citation omitted). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Id. (internal quotation marks and citation omitted). Here, because Plaintiff does not allege the Sheriff personally participated in the incident, Plaintiff must show a causal connection between the Sheriff's actions and the alleged constitutional violation.

A causal connection may be established when: (1) "the supervisor's policy or custom resulted in deliberate indifference;" (2) "the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice that led to the alleged deprivation, and he failed to do so;" or (3) "the supervisor directed the subordinate to act unlawfully and failed to stop the unlawful action." White v. Thompson, 299 F. App'x 930, 933 (11th Cir. 2008) (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). In this case, Plaintiff does not allege the Sheriff was on notice of a history of widespread abuse or that he directed the jail personnel to act unlawfully. Thus, the Court must determine whether a genuine issue of material fact exists that the Sheriff's alleged improper policies resulted in deliberate indifference to decedent's constitutional right to health and safety.

Viewing the record and all reasonable inferences in the light most favorable to Plaintiff, Plaintiff presents no evidence to establish that the Sheriff's policies on screening, monitoring, and protecting suicidal detainees were improper and resulted in deliberate indifference to decedent's rights. A plaintiff may establish this type of causal connection by showing that the supervisor's policy was improper. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999); see Rivas v.

11

Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) ("Thus, liability may be imposed due to the existence of an improper policy or from the absence of a policy."). Plaintiff has not done so. Indeed, all Plaintiff has established in this case is that the Sheriff has policies in place for suicide prevention and that such policies were followed at the time of decedent's suicide. Moreover, the Sheriff's policies are more than sufficient. See Williams v. Lee County, Ala., 78 F.3d 491, 493 (11th Cir. 1996) (finding "less formal means of suicide prevention" than an instructional video and manual "to pass constitutional muster"); see also Belcher v. City of Foley, Ala., 30 F.3d 1390 (11th Cir. 1994) (holding that the failure to provide a written policy for handling suicidal inmates did not constitute deliberate indifference); Schmelz v. Monroe County, 954 F.2d 1540 (11th Cir. 1992) (holding that unwritten policy of identifying and protecting "potential suicidal inmates from self-harm" does not amount to deliberate indifference). Thus, Plaintiff fails to show the requisite causal connection between the Sheriff's policies and the alleged constitutional violation to impose supervisory liability on the Sheriff.[1]

### 2. Failure to Train

Plaintiff also contends the Sheriff's failure to properly train jail personnel in the handling of suicidal inmates resulted in deliberate indifference to decedent's constitutional right to health and safety. "A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his 'failure to train amounts to deliberate indifference to the

---

[1] Plaintiff also contends the Sheriff's policies are inadequate because the booking officer screened decedent while decedent was still visibly intoxicated. Plaintiff's § 1983 claims are against Houston County and the Sheriff only; Plaintiff does not sue the booking officer or any other jail personnel for failing to follow the policy. Moreover, Plaintiff does not allege a history of widespread abuse or that the Sheriff directed his subordinates to screen detainees while they are drunk; therefore, the Court's sole focus is on the Sheriff's supervisory liability and thus the adequacy of the written policy itself. As already discussed, the Sheriff's policies at issue are more than sufficient to pass constitutional muster.

rights of persons with whom the subordinates come into contact' and the failure has actually caused the injury of which the plaintiff complains." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1398 (11th Cir. 1994) (quoting Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990)). "Only when the failure to train amounts to 'deliberate indifference' can it properly be characterized as the 'policy' or 'custom' that is necessary for section 1983 liability to attach." Id. (quoting City of Canton, 489 U.S. 378, 389 (1989)). "Failure to train can amount to deliberate indifference when the need for more or different training is obvious . . . such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures . . . and when the failure to train is likely to result in the violation of a constitutional right." Id. at 1397-98 (citations omitted).

Here, the Sheriff's written manual used to train the staff specifically addressed suicide prevention. The manual outlined procedures for evaluating detainees with mental health problems, including potential suicide victims. Moreover, Plaintiff fails to rebut the evidence showing that the booking officer in this case knew how to screen, monitor, and protect county jail detainees in accordance with the Sheriff's policies. Because the training and monitoring procedures in place at Houston County Jail "tend to disprove deliberate indifference," the burden of producing some evidence of deliberate indifference shifts to Plaintiff. See Williams, 78 F.3d at 493 (holding that instructional video and manual covering suicide prevention shifted burden of proof to plaintiff to show deliberate indifference). Plaintiff, however, fails to put forth any evidence demonstrating that the need for more training was obvious or that the Sheriff's current training on handling suicidal detainees would likely result in a constitutional violation. Therefore, Plaintiff's failure to train claim must fail because no causal connection exists between the Sheriff's actions and the alleged

13

constitutional violation. Accordingly, even assuming Plaintiff sued the Sheriff in his individual capacity, summary judgment on these claims is appropriate.

  C.   *Claims Against Houston County*

   1.   <u>Training, Policies, and Practices on Screening, Monitoring, and Protecting Suicidal Detainees</u>

Plaintiff contends Houston County is liable for the deprivation of decedent's constitutional rights because the county was responsible for the training, policies, and practices on screening, monitoring, and protecting suicidal detainees. A county is "liable under section 1983 only for acts for which [the county] is actually responsible," but liability does not rest on a theory of respondeat superior. <u>Grech v. Clayton County, Ga.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003) (internal quotation marks and citation omitted). Instead, to prove a county's liability, the plaintiff must establish that the alleged constitutional violation was caused by the county's custom or policy. <u>Id.</u> This means the plaintiff must first show the county "has authority and responsibility over the governmental function in issue," and second, "identify those officials who speak with final policymaking authority for [the county] concerning the act alleged to have caused the particular constitutional violation." <u>Id.</u> at 1330 (citations omitted).

First, Plaintiff cannot prevail on her § 1983 claims against Houston County because she cannot show that the Sheriff's policies caused any constitutional violation. As described throughout this Order, the Sheriff's written manual addresses suicide prevention, and the jail personnel are trained to follow these policies. Second, even if Plaintiff were able to show the Sheriff had a policy that led to the alleged constitutional violation, her claim would still fail. The Sheriff was the final policymaker, and, as discussed <u>supra</u>, the Sheriff acted as an arm of the State, not the county, when

he implemented polices to screen, monitor, and protect suicidal detainees. Thus, Houston County cannot be liable for the Sheriff's polices at issue. See Grech, 335 F.3d at 1331 ("sheriff's policy or act cannot be said to speak for the county if the county has no say in what policy or action the sheriff takes.").

### 2. Negligent Retention and Supervision

Additionally, Plaintiff contends Houston County negligently retained and supervised the Sheriff after having knowledge of his policies on screening, monitoring, and protecting suicidal detainees. However, since the Court finds the Sheriff acted as an arm of the State, and not the county, regarding these policies, Houston County had no authority over the Sheriff and therefore cannot be liable for these claims. See Turquitt, 137 F.3d at 1291 ("The County cannot be liable for the harms that befall jail inmates due to improper operation of the jail or negligent supervision of its inmates because the County has no responsibility in that area."). Accordingly, summary judgment is appropriate regarding Plaintiff's § 1983 claims against Houston County.

## II. State Law Claims

In addition to her § 1983 claims, Plaintiff has alleged state law claims against Defendants for wrongful death and negligence. The Court's jurisdiction over these claims is supplemental, not original. See 28. U.S.C. § 1367(a). "The district court may decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3)." Granda v. Schulman, No. 09-12564, 2010 WL 1337716, *2 (11th Cir. Apr. 7, 2010); see Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial.") (per curiam) (citation omitted). In this case, the Court has

dismissed all of Plaintiff's claims over which it has original jurisdiction; therefore, the Court **DISMISSES without prejudice** the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. 9] is hereby **GRANTED** as to all claims over which the Court has original jurisdiction, and Plaintiff's state law claims are **DISMISSED without prejudice**.

**SO ORDERED** this 14th day of June, 2010.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

APG/ssh